O'REILLY v. CURTIS PUB. CO.

No. 7022.

District Court, D. Massachusetts.

March 2, 1938.

Dangel & Sherry and Edward M. Dangel, all of Boston, Mass., for plaintiff.

Maxwell E. Foster, of Boston, Mass., Choate, Hall & Stewart, John L. Hall, John M. Hall, and Bailey Aldrich, all of Boston, Mass., for defendant.

McLELLAN, District Judge.

The plaintiff moves that pages numbered 2 and 3 of the defendant's answer to the plaintiff's amended declaration be stricken out. These pages read:

"And further answering, the defendant says that if it ever published or disseminated the written matter annexed to plaintiff's amended declaration as 'B,' which includes excerpts annexed as 'A,' said written matter in fact constituted an instalment of a work of fiction and that no reference to the plaintiff was made or was intended to be made by the author or by anyone else and that the character O'Reilly was a purely fictitious character and did not refer to any actual person alive or dead and could not under the circumstances of its publication reasonably be taken to refer to any actual person alive or dead.

"And further answering, the defendant says that if it ever published or disseminated the written matter annexed to plaintiff's amended declaration as 'B,' which includes excerpts annexed as 'A,' said written matter formed the third of four instalments of a novel or work of fiction entitled 'George Apley' by J. P. Marquand then appearing in the magazine known as 'The Saturday Evening Post'; that the 'Table of Contents' of each issue of The Saturday Evening Post in which such an instalment appeared contained the following statement:

" 'The names of all characters that are used in short stories, serials and semi-fiction articles that deal with types are fictitious. If the name of any living person is used, it is a coincidence';

that the character O'Reilly was a purely fictitious character, dealt with a type, and did not refer, and was not intended to refer, and could not under the circumstances of its publication reasonably be taken to refer, to any actual person alive or dead; that in the issue in which the first instalment appeared there was published in addition to said statement the following statement from the author, J. P. Marquand:

" 'This biographical form has often intrigued me because it has seemed to me an excellent vehicle for fiction if one were writing a novel showing the life and manners of a certain period. By using a wholly imaginary person whose letters are to be collected and whose life is to be written by an imaginary individual, it seemed to me that a narrative could be written from several points of view, that

of the biographer, that of the biographer's subject, and those of the subject's relatives and friends. I have attempted this by writing the life and letters of the late George Apley, of Boston, which were compiled by his old literary friend, Horatio Willing, at the request of the late Mr. Apley's family. It is needless to say that both Mr. Apley and Mr. Willing are pure figments of the imagination, yet they both represent types of persons well known in New England, though, perhaps, not so familiar in other parts of the country';

that the said written matter alleged by the plaintiff to have been a libel on him is, under the circumstances of its publication, incapable of any defamatory meaning or of any meaning defamatory of any actual person alive or dead and is not actionable.

"And further answering, the defendant says that if it ever disseminated or published the written matter annexed to plaintiff's amended declaration as 'B,' which includes excerpts annexed as 'A,' the said written matter alleged by the plaintiff to have been a libel on him is, under the circumstances of its publication, incapable of any defamatory meaning or of any meaning defamatory of any actual person alive or dead; is not libellous per se, and is not actionable without proof of special damages, and none is alleged."

The plaintiff says that the foregoing allegations of the answer amount only to the general issue at common law and that under the Massachusetts Practice Act the matter alleged can be shown under a general denial. As authority for the allowance of his motion, the plaintiff cites Gardner v. Webber, 17 Pick., Mass., 407, which states that, when a plea amounts to the general issue, "the remedy is properly by motion, and it is addressed to the sound discretion of the judge." Without pausing to determine whether all the averments of the answer here subject to attack are as to matters which could be shown under a general denial, I conclude that in the exercise of the court's discretion this ground for allowing the plaintiff's motion to strike should not be sustained.

The plaintiff urges also that the answer is unnecessarily prolix and argumentative, but I do not regard the answer as vulnerable to a motion to strike the last two of its three pages, for this reason.

The last ground for the plaintiff's motion stated on his brief is that "the

matters on pages 2 and 3 of the defendant's answer do not disclose a legal defense."

The Rules of the Superior Court of Massachusetts provide as follows (rule 24—applicable to civil cases): "There shall be no right to except to bills, answers and other proceedings for scandal or impertinence, but the court may, upon motion or its own initiative, order any redundant, impertinent or scandalous matter in any pleading or paper at law or in equity or divorce, stricken out, upon such terms as the court shall think fit."

As I understand the plaintiff's contention, it is in part that the objective theory, so called, of the law of libel is applicable in the federal courts, and that the allegations of the answer that no reference to the plaintiff was made or intended in the defendant's publication are ineffective. See Washington Post Company v. Kennedy, 55 App.D.C. 162, 3 F.2d 207, 41 A.L.R. 483. It is urged in substance that, if the publication is of such a character as to lead the plaintiff's friends and acquaintances to understand that the alleged libellous statements were made of and concerning the plaintiff, this is enough.

I do not pause to consider whether the plaintiff is right in this or not, because I do not regard a solution of this question, involving, among other things, a consideration of the possibly subjective theory of the Massachusetts courts (see Hanson v. Globe Newspaper Company, 159 Mass. 293, 34 N.E. 462, 20 L.R.A. 856) and the application of Swift v. Tyson, 16 Pet. 1, 10 L.Ed. 865, as appropriate to a motion to strike out portions of the defendant's answer. See Mutual Life Insurance Company v. Johnson, 293 U.S. 335, 55 S.Ct. 154, 79 L.Ed. 398, and the note entitled "Some Recent Implications of Swift v. Tyson" in the Harvard Law Review, vol. 48, p. 979.

For like reasons no attempt is made to decide whether, if the matter contained in the answer constitutes no defense, it would be admissible in mitigation of damages or affect punitive damages which under some circumstances may be recovered. Memphis Press-Scimitar Company v. Chapman, 6 Cir., 62 F.2d 565.

A motion to strike was never intended to furnish an opportunity for the determination of disputed and substantial questions of law. Motions to strike have been allowed in equity apart from any rule of court, and they were not unknown in actions at common law. See Chaves v. Weeks, 242 Mass. 156, 136 N.E. 73; Christensen v. Bremer, 263 Mass. 129, 160 N.E. 410. The function of a motion to strike any redundant, impertinent or scandalous matter in any pleading is stated in Haberman v. Kaufer, 60 N.J.Eq. 271, 274, 47 A. 48, 49, substantially as follows: In order to succeed in a motion to strike out matter from an answer it must be shown that "the matter criticized is so unrelated to the complainant's claim as to be unworthy of any consideration as a defense" and that if the part of the answer objected to "be found to be so connected with the subject-matter of the complainant's suit that it may fairly be deemed to present some question, of either law or fact, which the court ought to hear and determine, then it cannot be stricken out as impertinent, but must be considered, and its sufficiency must be passed upon as a defense, either of fact or of law, to the action." See, also, Commonwealth Title & Trust Company v. New Jersey Lime Company, 86 N.J.Eq. 450, 100 A. 52.

Without attempting to pass upon the question whether the allegations of the answer to which the motion to strike is addressed constitute a defense or are receivable in mitigation of damages, I conclude merely that the allegations are not of such a character as to require striking them from the answer. The plaintiff's motion "that pages numbered two and three of the defendant's answer to the plaintiff's amended declaration be stricken out" is denied.