**AMERICAN FAMILY MUTUAL INSURANCE COMPANY,**
Plaintiff-Appellee,

v.

**Larry D. JONES and Sandra L. Jones,**
Defendants-Appellants.

No. 83–1659.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 8, 1984.

Decided July 25, 1984.

Rehearing Denied Aug. 20, 1984.

---

Charles Thomas Gleason, Gleason, Hay & Gleason, Indianapolis, Ind., for defendants-appellants.

William M. Osborn, Osborn & Hiner, Indianapolis, Ind., for plaintiff-appellee.

Before WOOD and POSNER, Circuit Judges, and REYNOLDS, Chief District Judge.[*]

REYNOLDS, Chief District Judge.

On this appeal, we are asked to decide whether, under Indiana law, a party who passes a worthless check to an insurer's agent in exchange for the agent's promise to provide coverage, and who subsequently requests that the application for coverage be withdrawn, is covered by virtue of the agent's promise. The district court concluded that no coverage could exist in such a situation and entered judgment in favor of the insurer. We agree with the district court's conclusion but for a different reason.

The facts giving rise to this action are as follows. Larry D. Jones and Sandra L. Jones were building a house in Bargersville, Indiana, and needed additional funds to complete their project but their lending institution told them that they would not receive a loan unless they first obtained insurance on the house. On December 10, 1981, the Joneses met with W. Danny Brown, an agent of the American Family Mutual Insurance Company ("American Family"), and discussed their need of insurance coverage. The Joneses filled out an application for fire insurance coverage and gave it to Brown. Mr. Jones gave Brown a check in the amount of $140, payable to American Family. This amount was approximately one-half of the premium.

---

[*] The Honorable John W. Reynolds, Chief District Judge for the Eastern District of Wisconsin, sitting by designation.

Brown agreed to extend thirty days' credit for the balance. He then orally bound the coverages referred to in the application, and telephoned the Joneses' lending institution and informed it of the coverages.

On December 11, 1981, Brown deposited the Joneses' check. On December 12, the Joneses' lending institution informed them that they would not be given a loan. The Joneses thereafter discussed canceling the coverages. On December 14, Mrs. Jones telephoned Brown and told him that the $140 check would bounce. Brown advised against canceling the policy, but said that if that was what they wanted, he would do it. Brown concluded the conversation by telling Mrs. Jones to have Mr. Jones telephone him so that they could discuss the possibility of a monthly payment plan. Brown then called the American Family underwriter and asked that the application be withdrawn and returned to him. He received it on December 15, 1981.

In the afternoon of December 15, 1981, the Joneses' home was damaged by fire. The next day, Brown called the American Family underwriter and informed him of the incident. The underwriter told Brown to make certain that there was a cancellation notice effective as of the time Mrs. Jones had telephoned Brown. Brown then drafted a cancellation notice to American Family. The Joneses' check was returned because of insufficient funds on December 24, 1981.

■ On May 14, 1982, American Family filed a diversity action in the Southern District of Indiana seeking a declaratory judgment determining that the Joneses were obligated to arbitrate any dispute over American Family's purported liability or, alternatively, determining that the insurance coverage was ineffective, cancelled, or rescinded. The Joneses counterclaimed, seeking recovery of the amount of damages sustained in the fire and punitive damages. On March 11, 1983, the district court granted American Family's motion for summary judgment. The court determined that payment of a premium was prerequisite to insurance coverage, that the worthless check did not constitute such a payment, and therefore no coverage existed. On April 25, 1983, the district court entered a *nunc pro tunc* judgment amending its judgment of March 11, 1983, to comply with Fed.R.Civ.P. 54(b).[1] This appeal followed.

---

1. Fed.R.Civ.P. 54(b) provides:

Judgment Upon Multiple Claims or Involving Multiple Parties. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liability of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties. The rule permits exceptions to the basic principle that orders adjudicating fewer than all of the claims are not appealable final decisions under 28 U.S.C. § 1291. Under Rule 54(b), an aggrieved party may appeal from such an order if the district court (1) expressly directs the entering

of a final judgment, and (2) expressly determines that there is no just cause for delay and expressly directs entry of judgment. If these elements are not present in the district court's order, an appeal therefrom will be dismissed for lack of jurisdiction. *Maneikis v. Jordan,* 678 F.2d 720 (7th Cir.), *cert. denied,* 459 U.S. 990, 103 S.Ct. 346, 74 L.Ed.2d 386 (1982).

In the present case, the district court granted American Family's motion for summary judgment in an order dated March 11, 1983, which provided in part:

This cause is before the Court upon plaintiff's motion for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure.

Whereupon the Court, after oral argument and having examined the motion and memoranda filed hereby GRANTS the plaintiff's motion.

IT IS SO ORDERED.

The *nunc pro tunc* judgment entry of April 25, 1983, provided:

This Court having heretofore entered its judgment entry dated March 11, 1983 granting plaintiff's motion for summary judgment now enters the following nunc pro tunc judgment entry:

The Joneses contend, in essence, that the district court erroneously concluded that payment of the premium was a precondition to coverage. They recite the common law principle that because promises to pay premiums are implied by law, oral contracts to insure can be binding notwithstanding the fact that the insured was not paid a premium. They argue that this principle inures to their benefit, because the agent bound coverage when he accepted their check and promise to pay the balance, and because both parties intended that the Joneses would have thirty days to pay the entire premium. American Family responds that implied promises to pay arise only where the insurer has waived prepayment. Alternatively, American Family argues that the Joneses rescinded or cancelled the coverage when Mrs. Jones telephoned Brown on the day before the fire.

■ In general, the insured's payment of a premium is the *sine qua non* of an enforceable insurance contract. *Hargis v. United Farm Bureau Mutual Insurance Company*, 180 Ind.App. 432, 388 N.E.2d 1175, 1179 (1979). The authorities agree that the consideration in the making of a contract for insurance is a premium to be paid by the insured in exchange for the insurer's assumption of the risk of a specified peril. 14 J. Appleman, Insurance Law and Practice § 7833 at 8–9 (1944); 5 G. Couch, Cyclopedia of Insurance Law §§ 30:2–30:3 (R. Anderson 2d ed. 1961). Additionally, the insured's promise to pay the premium suffices as consideration when accepted as such by the insurer. *Id.*, § 30:2 at 507.

■ Although there are no Indiana cases on point, the rule is well established that where a check is taken as payment of a premium, the payment is conditional only, the condition being that the check be honored upon presentment.[2] *See, e.g., Johnson v. Dairyland Insurance Co.*, 398 So.2d 317 (Ala.Civ.App.1981); *Fidelity & Casualty Co. v. Scott*, 390 So.2d 820 (Fla.App. 1980); *Kersh v. Life & Casualty Insurance Co.*, 109 Ga.App. 793, 137 S.E.2d 493 (1964); *Noble v. John Hancock Mutual Life Insurance Co.*, 7 Mass.App. 97, 386 N.E.2d 735 (1979); *Hauter v. New York Property Insurance Underwriting Ass'n*, 94 A.D.2d 696, 461 N.Y.S.2d 897 (1983); *Nationwide Mutual Insurance Co. v. Smith*, 153 W.Va. 817, 172 S.E.2d 708

This cause is before the Court on plaintiff's Motion for Summary Judgment pursuant to Rule 56, Federal Rules of Civil Procedure.

Whereupon the Court, after hearing oral argument and having examined the motion and memoranda filed, expressly determines that there is no just reason for delay, and hereby Grants the plaintiff's motion and expressly directs the entry of final judgment for plaintiff on plaintiff's complaint.

It Is So Ordered.

It is not altogether clear why the district court found it necessary to enter a partial judgment pursuant to Rule 54(b). True, the Joneses had filed a counterclaim, and it may be that the district court intended only to grant summary judgment on American Family's complaint and retain the counterclaim for further proceedings. However, our review of the pleadings compels the conclusion that a judgment in favor of American Family on its complaint effectively disposed of the Joneses' counterclaim. In the memorandum entry of March 11, 1983, the district court held that there was no coverage, and therefore there would be no basis for an award of compensatory or punitive damages in the Joneses' favor. At oral argument, we understood counsel to agree that the judgment in favor of American Family disposed of the Joneses' claims as a practical matter.

We conclude that the district court's use of Rule 54(b) was unnecessary in this case. A better procedure would have been to state in the original order that judgment would be entered against the Joneses on their counterclaim, because the counterclaim could not logically survive a judgment in favor of American Family in the complaint. The parties have not briefed this issue, but it certainly deserves attention because we have previously expressed our concern for the compliance with the specific requirements of Rule 54(b), *see, e.g., A/S Apothekernes Laboratorium for Special praeparater v. I.M.C. Chemical Group, Inc.*, 725 F.2d 1140, 1142–43 (7th Cir.1984); *U.S. General, Inc. v. City of Joliet*, 598 F.2d 1050, 1051 n. 1 (7th Cir.1979), and because in this case, the district court's omission to dispose of the counterclaim raises the technical possibility of multiple, duplicative appeals.

2. Indiana has recognized this rule in the context of other types of transactions. *See, e.g., Karvalsky v. Becker*, 217 Ind. 524, 29 N.E.2d 560 (1940); *Borne v. First National Bank*, 123 Ind. 78, 24 N.E. 173 (1890).

(1970). *See also* 6 G. Couch, *supra*, § 31.44. Thus, if a check is tendered in payment of an initial premium and is returned to the insured marked "not sufficient funds," the coverage is never effective. 14 J. Appleman, *supra*, § 8144.

The district court relied on the foregoing principle in deciding the motion for summary judgment in American Family's favor. Because there was no dispute that the Joneses' check for $140 was worthless when it was tendered, the Joneses had failed to give consideration for the promise to provide coverage, and therefore coverage never became effective.

■ This analysis overlooks the rule that a check may be taken in absolute satisfaction of a premium claim. Once again, we find no binding authority in point, but courts generally recognize that in appropriate circumstances, coverage becomes binding upon acceptance of the check. If the check is subsequently dishonored, the insurer may not then treat coverage as having been forfeited, but is relegated to an action on the instrument. 6 Couch, *supra*, at 31:45. *See also* Annot. 50 A.L.R.2d 630 at 642–650 (1956), and authorities cited therein.

Having recognized this rule, we hesitate to hold that the issue of whether the Jones-es were covered turns on the integrity of their check. No one disputes that when Brown took their check and accepted their promise to pay the balance of the premium in thirty days, he orally bound coverage and told the Joneses' creditor that they were covered. Larry Jones had told Brown that coverage was necessary for the purpose of obtaining a loan, and Brown contacted the lender as soon as he finished the negotiations with the Joneses. Presumably, then, Brown intended that coverage become effective immediately. It may well be that Brown thus intended to waive the right to treat the check as mere conditional payment.[3]

■ We need not decide whether an Indiana court would regard Brown's representations as rising to the level of an unconditional receipt, because we are satisfied that even if the Joneses were covered, that coverage was cancelled when Sandra Jones telephoned Brown to tell him that the check would bounce. Under Indiana law, once a valid contract of insurance is created, the parties may cancel the contract by mutual agreement, and an agreement to cancel may be demonstrated by the parties' respective acts. *Cook v. Michigan Mutual Liability Company*, 154 Ind.App. 346, 289 N.E.2d 754 (1972). In the present case, we

---

**3.** There appears to be no issue with respect to Brown's authority to issue an oral binder upon tender of a check as partial payment of a premium and a promise to pay the balance with a specified period, because American Family implicitly concedes on brief that Brown was so authorized. That Brown would have this authority is consistent with standard practice in the insurance business, *see* 2 Couch, *supra*, § 14:32, and Indiana recognizes a general agent's power orally to bind the insurer at the time an insurance application is submitted. *Hoosier Insurance Co. v. Ogle*, 150 Ind.App. 590, 276 N.E.2d 876 (1971).

Notwithstanding the foregoing, the district court's memorandum entry suggests that under the American Family policy, payment of a premium was contemporaneous with coverage.

The application provided in part:
*INSURING AGREEMENT*
    *We* will provide the insurance described in this policy in return for *your* premium payment and compliance with policy provisions (American Family Mutual Insurance Company Homeowners Policy at 1.)

*GENERAL CONDITIONS*
    1. *Policy Period—Renewal of Coverage* . . . .
This policy may be continued for successive periods by payment of the required premium on or before the effective date of each renewal period. If the premium is not paid when due, this policy expires . . . (*Id.* at 11.)
Apparently the district judge regarded the application as an agreement that coverage would become effective only upon payment of the premium, and that the parties intended a contemporaneous exchange.

As mentioned earlier, the Joneses find this result irreconcilable with the time-worn principles announced in *Western Assurance Co. v. McAlpin*, 23 Ind.App. 220, 55 N.E. 119 (1899), that a contract of insurance may exist without either the payment of the premium or an express promise to pay, and that authorized agents may waive prepayment of the premium notwithstanding a stipulation in the policy to the contrary. Because our decision rests on a finding that any coverage was cancelled, we decline to apply any of the principles set forth in *McAlpin* to these facts.

recognize that the parties dispute precisely what was said during Sandra Jones' conversation with Brown, although the parties agree that Mrs. Jones told Brown that the check would bounce, that Brown advised against cancellation, and that Brown concluded the conversation by saying that "... if that's what they wanted, I'd do it ...." Whatever doubts one might entertain about the parties' intentions are removed by the fact that Brown thereupon telephoned the American Family underwriter to have the application withdrawn and sent back to him. One can only conclude that the parties contemplated that any coverage be cancelled, and the cancellation was effective as soon as the telephone conversation between Brown and Mrs. Jones ended. *See* 8B J. Appleman, *supra*, § 5011. Therefore, no coverage existed at the time of the fire.

In summary, we conclude that while there may be an issue of whether an insurer's agent can waive conditional acceptance of an applicant's premium check by stating to the applicant that coverage is effective immediately, the conduct of the parties in the present case compels the conclusion that any such coverage was cancelled. It follows that the judgment of the district court must be AFFIRMED.